IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BOBBIE J. ARN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:10-cv-01239-NKL |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER**

Before the Court is Plaintiff Bobbie Arn's Social Security Complaint [Doc. # 1]. For the following reasons, the Court reverses and remands the decision of the Administrative Law Judge ("ALJ").

**I.    Background.**[1]

This case involves a claim for Disability Insurance benefits under Title II of the Social Security Act., 42 U.S.C., §§ 410 *et seq.*; 42 U.S.C. §§ 1382, *et seq*. Plaintiff Arn contests the Defendant's finding that she is not disabled.

    **A.    Medical Evidence**

Plaintiff Arn alleges disability due to depression, anxiety, back problems, hepatitis C, arthritis, and chronic obstructive pulmonary disease (COPD).

An x-ray of Arn's lumbar spine dated January 20, 2007, showed mild degenerative disc disease at L4-5.

---

[1] The facts and arguments presented in the parties' briefs are duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

On November 15, 2007, Arn saw Nurse Nancy Todd for her Hepatitis C. Arn reported some shortness of breath upon exertion, depression and anxiety. Nurse Todd reported no shortness of breath or wheezing upon physical examination of Arn.

On August 29, 2008, Robert G. Urie, Ph.D., prepared a psychological assessment of Arn. Dr. Urie diagnosed her with major depressive disorder, recurrent, moderate, and polysubstance dependence, and assigned a global assessment of functioning ("GAF") score of 51.

On October 1, 2008, Arn saw John Campobasso, D.O., regarding her generalized anxiety disorder. Dr. Campobasso noted that Plaintiff's anxiety was well-controlled with medication, and that she did not have depressive symptoms. No chest pains or shortness of breath were reported.

A week later, on October 8, 2008, Arn saw Nancy Todd, A.N.P., regarding her hepatitis C. Nurse Todd noted that patient stated overall she feels well. However, the records also note that her depression was unstable, and her breath sounds were decreased bilaterally. On December 3, 2008, Arn returned to Nurse Todd regarding her hepatitis C. Arn said her depression was about the same. Nurse Todd stated that the patient presented with no complaints. However, Todd's notes also show that Arn complained of fatigue, insomnia and depression. The physical examination also revealed that her lungs were decreased bilaterally.

On November 7, 2008, Arn presented to the Samuel Rodgers Community Health Center for therapy, where she was diagnosed with depressive disorder, and was tearful and anxious.

On November 14, 2008, Arn was given a GAF score of 50. On December 9, 2008, Arn saw Dr. Jack Edmisten for a consultative psychological examination, in which he assigned a GAF score of 65.

On February 4, 2009, Arn saw Dr. Campobasso. Dr. Campobasso noted that Arn's anxiety was well controlled with medication. The following day, Arn presented to Nurse Todd regarding her hepatitis C. She had no shortness of breath or wheeze but she did have a congested cough. She also complained of abdominal pain intermittently with radiation to the left buttock, with nothing precipitating the pain and nothing making the pain go away.

On February 18, 2009, Arn presented to Dr. Campobasso with low back pain. She said that her pain was exacerbated by forward flexation and side bending. A bone density study dated February 24, 2009, indicated osteoporosis of the lumbar spine of a significant degree and a moderately severe degree of osteopenia of the hips.

Plaintiff had joint tenderness in her knees on objective examination on April 22, 2009, with previous complaints of knee pain also documented in the record.

On July 10, 2009, Arn presented to Dr. Campobasso with low back pain. Dr. Campobasso reported that Arn continued to have chronic low back pain and had low back pain for a significant amount of time. He stated the pain was interfering with Arn's activities of daily living.

An x-ray on July 22, 2009, showed multilevel degenerative disc disease, diffuse osteopenia, and severe disc space narrowing. This x-ray described the disc space narrowing at L5-S1 as marked and severe with possible sclerotic changes and L4 compression deformity. Magnetic resonance imaging (MRI) of Arn's lumbar spine dated August 28, 2009, indicated mild degenerative changes and mild disk bulging at the L4-5 level.

On September 9, 2009, Dr. Campobasso reported that Arn's back pain was unresponsive to prescribed medication and would not be relieved by surgery. He stated that he believed the

degenerative changes rather than the discogenic disease was causing her pain. Dr. Campobasso stated that Arn had pain significant enough to interfere with activities of daily living.

On January 25, 2010, Arn's GAF score was noted to be 45-50. Dr. Parimal Purohit prescribed Xanax, Celexa and Seroquel. On February 22, 2010, Dr. Purohit increased her dosage of Seroquel, diagnosing her with bipolar mood disorder, generalized anxiety disorder, panic disorder and social phobia. Dr. Purohit also stated that Arn was doing better on medication but that she was having a hard time concentrating and organizing herself.

### B. Administrative Hearing

Plaintiff Arn's administrative hearing was held on May 10, 2010. Arn testified that she was a high school graduate and had not been employed since March 2005. She testified that she was unable to work because she was "fatigued all the time," depressed, and had crying spells, back pain and hepatitis C. Arn testified that she had no trouble standing or walking, but then testified that she could stand for only 15 to 20 minutes at a time. After standing for 15 to 20 minutes, Arn said she had to lay down and rest because of fatigue. She said she could sit for no more than 15 minutes due to back pain. In a typical day, Plaintiff said she would clean her house, care for her dogs, and cook. She also testified that someone helped her with "major cleaning."

Lisa Keen, a vocational expert, also testified at the hearing. The ALJ asked if any occupation existed in significant numbers for a hypothetical person with Arn's age, education, and work experience who was capable of work at the light exertional level, with only occasional stooping, kneeling, crouching, crawling, and climbing of stairs or ramps, and no climbing of ladders, ropes or scaffolds. The ALJ further limited the hypothetical person to no toleration of

4

extremes of cold or heat, or work around vibration, and only occasional interaction with co-workers and the general public. Ms. Keen responded that the individual could work as a housekeeper, sub-assembler for electrical equipment, or small parts assembler.

### C. The ALJ's Decision

The ALJ found that Arn had the severe impairments of mild degenerative disc disease of the lumbar spine, and bipolar/depressive disorder, while noting Arn's "long history of drug abuse prior to her alleged onset date" and her "history of incarceration for criminal activity relating to drugs." [Tr. 29]. The ALJ ultimately determined that Arn did not "have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* The ALJ determined that Arn had no restriction in activities of daily living, had moderate difficulties in social functioning, and had moderate difficulties regarding "concentration, persistence or pace." [Tr. 30].

The ALJ found that Arn retained the Residual Functional Capacity ("RFC") to "perform light work as defined in 20 CFR. 416.967(b) except for only occasional stooping, kneeling, crouching, crawling, and climbing stairs or ramps." *Id.* The ALJ added that Arn could not "climb ladders, ropes or scaffolds or tolerate vibration or exposure to extremities of heat or cold," and that "[e]motionally, she can have only occasional contact with coworkers or the public." *Id.*

The ALJ concluded that, while Plaintiff Arn was unable to "perform any past relevant work" due to her RFC, "there are jobs that exist in significant numbers in the national economy that claimant can perform." [Tr. 33].

## II. Discussion

## A. Standard of Review

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citation omitted). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

## B. Whether the ALJ Properly Considered the Evidence of Arn's Impairments

Arn argues that the Commissioner ignored substantial evidence of Arn's back impairment, COPD and arthritis. The ALJ must not ignore recent evidence consistent with claimant's subjective complaints even if it conflicts with prior medical reports. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) ("ALJ improperly relied on the…1990 medical progress notes to discredit Frankl's complaints of fatigue to the exclusion of subsequent medical, nonmedical, and testimonial evidence that was consistent with Frankl's complaints of fatigue at the time of the hearing, over a year later"). The opinion of a consultative, non-examining physician normally does not constitute substantial evidence for a decision to grant or deny disability benefits. *Jenkins v. Apfel*, 196 F.3d 922 (8th Cir. 1999). An ALJ can generally credit other medical reports over that of a treating physician only if the other assessments are supported by "better or more thorough medical evidence." *Casey*, 503 F.3d at 691-92.

6

The ALJ in his decision seemingly relied entirely on a report by State agency medical consultant Dr. Joyce Majure-Lees, dated 12/30/08, for evidence of Arn's back pain. Dr. Majure-Lees was a non-treating, non-examining physician. In the report, Dr. Majure-Lees discussed an x-ray dated 1/20/07, which described Arn's back impairment as mild degenerative disc disease. The Plaintiff alleged the onset date of her disability to be 8/22/08. The ALJ did not address any of the tests occurring after the alleged date of onset. These tests included an x-ray on 7/22/09, showing multilevel degenerative disc disease, diffuse osteopenia, and severe disc space narrowing, as well as a bone density scan revealing significant osteoporosis in Arn's back, as well as an MRI. The ALJ also did not reference the records from 09/09/09, in which the treating physician opined that Arn's back pain was significant enough to interfere with Arn's activities of daily living, was unresponsive to prescribed medication and would not be relieved by surgery. In his decision, therefore, the ALJ failed to consider the severity of Arn's back impairment based directly on the entire record of evidence, particularly the records from treating physicians which occurred after Dr. Majure-Lees's report.

Arn alleges also that the ALJ erroneously failed to consider Arn's COPD or breathing difficulties. Even in the absence of objective medical evidence pointing to a severe disability, the ALJ must give full consideration to all the evidence related to a claimant's subjective complaints concerning their disability, including observations by third parties and physicians. *See e.g. Willcockson v. Astrue,* 540 F.3d 878 (8th Cir. 2008). Arn's medical record contains no diagnosis of COPD. However, there are several references to breathing difficulties. The ALJ mentions results from an October 2008 exam of Arn which noted diminished breath sounds but without cough, wheezing or shortness of breath. Arn pointed to additional exams on 12/03/2008,

7

in which her lungs were decreased bilaterally, with no cough, wheeze or shortness of breath noted, and on 02/05/2009, in which her lungs were decreased bilaterally with no shortness of breath or wheezing, but the presence of a congested cough. Arn also points to an x-ray revealing Arn's lungs to be hyperinflated with focal scarring at each apex. The medical evidence alone does not point clearly to any diagnosis of COPD, but it is suggestive of some malfunctioning of Arn's lungs. Arn also contributes to the record her own testimony concerning her difficulties breathing, as well as the testimony of an Social Security Administration employee who stated that Arn sounded like she had a breathing problem.

It is possible that Arn's subjective complaints of difficulty breathing are inconsistent with the objective medical records omitted from the ALJ's analysis. However, the ALJ never stated that he found Arn's own complaints, or the testimony of a third party concerning Arn's breathing problem inconsistent with the record as a whole. The Court is left to infer that the ALJ ruled Arn's testimony incredible because of an apparent conflict with the objective medical evidence; however, the Eighth Circuit has found this approach improper, requiring the Court to make explicit its findings. *Herbert v. Heckler*, 783 F.2d 128, 131 (8th Cir. 1986).

Arn also argues that the ALJ ignored substantial evidence of Arn's low GAF scores concerning her mental health. Though the ALJ mentioned instances in which a physician assigned Arn GAF scores of 51 or lower, he pointed to other statements within the treatment record as suggesting improvement, including a follow-up note stating that claimant was improving with medication with calmer nerves and better sleep. The ALJ concluded that he had considered the low GAF scores to indicate a short-term deterioration in functioning which so far had responded well to treatment.

8

However, in concluding that the plaintiff improved despite declining GAF scores, the ALJ veered uncomfortably toward the field of diagnosis, while failing to analyze other significant evidence within the treatment record. An ALJ cannot substitute his own opinion for that of treating physicians. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990). Arn received her lowest GAF score, 45 to 50, on January 25, 2010. She received her highest GAF score on December 9, 2008. There is no indication in the follow-up note in January 2010 that the improvement discussed refers to her condition in December 2008 rather than some temporary improvement. Rather, the treatment record presents evidence that Arn's condition declined over the years. Not only was there a steep drop in her GAF score over that two year period but there are also notes by treating physicians, which the ALJ does not reference, which state that Arn continued to have a hard time concentrating and organizing herself and had unstable depression. Her medications were increased in number and dosage. In failing to consider in his decision this potentially conflicting evidence, the ALJ failed to justify his decision through a showing of substantial evidence.

Even if Arn's breathing problems and arthritis do not rise to the level of a severe impairment, the ALJ is required to consider the combined effects of all a claimant's impairments, even those considered non-severe. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990). Given the ALJ's failure to review the entire medical record concerning Arn's back pain, breathing difficulties, and mental functioning, the ALJ will need to reconsider the evidence of Arn's arthritis, COPD, and mental health in light of the whole medical record.

**C.     Whether the ALJ Erred in his Consideration of Third Party Information**

Plaintiff Arn next argues that the ALJ erred in failing to consider the evidence provided by lay employees of the Social Security Administration. As stated above, the ALJ is required to consider third party information and observations when evaluating a claimant's subjective complaints. *See Herbert v. Heckler*, 783 F.2d 128, 131 (8th Cir. 1986) (finding the ALJ "failed to give full consideration to all of the evidence presented relating to Herbert's subjective complaints," specifically referencing "evidence in the record concerning observations by third parties and treating and examining physicians"). The ALJ is not required to accept all lay testimony, but it is "almost certainly error to ignore it altogether." *Willcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir 2008). The ALJ is required to explain what weight he places or does not place on various pieces of evidence within the record, including non-medical evidence. *Id.* at 881. The SSA regulations themselves point to the value of third party testimony, including SSA employees, in evaluating credibility and symptoms and in calculating the RFC. 20 C.F.R. ¶ 416.913(d). This testimony will be used if it can "reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

Here, the Commissioner states that the ALJ properly discounted the opinion of M. Vath-Carpent because the testimony of a layperson is of little value when compared to the rest of the record. Nowhere in the decision, however, is any discussion of the statements of the third parties' statements, despite their clear value in providing insight into Arn's credibility and symptoms. SSA employee M. Vath-Carpent observed that Arn sounded as though she had a cold or a breathing problem. This statement can reasonably be used to support Arn's medical records and subjective complaints concerning her lungs and breathing. The ALJ also failed to reference statements from Calvin Garrett and Barbara Mynatt which would support Arn's claims that she

10

lacked the ability to do tasks essential in the workplace, including lifting, standing, concentrating, and completing tasks. Because the ALJ does not even acknowledge this testimony, much less explain how it is inconsistent with the objective medical evidence, the Court determines that the ALJ erred as a matter of law.

### D. Whether the ALJ Properly Weighed the Medical Opinions

As stated in the discussion above, the opinions of doctors who do not examine a plaintiff do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). The ALJ must not rely on a non-examining physician's RFC when his assessment was completed a year before the hearing and is not based on the full record of the case. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995). Here, the non-examining, non-treating physician's RFC was prepared around 12/30/08, but the hearing was not held until 03/10/10, and other medical evidence was received after 12/30/08, including reports by treating physicians indicating possible worsening of Arn's condition, and another report by a non-examining physician, Dr. Pentecost, which the ALJ never directly addresses. Thus, the ALJ's heavy reliance on Dr. Majure-Lees' report to the exclusion of later evidence is not justified.

Here, the Commissioner claims that the ALJ did fully consider Dr. Pentecost's medical opinion when he included in Arn's RFC a limitation that she be restricted to only occasional contact with coworkers or the public. The Commissioner claims that Dr. Pentecost's opinion that "the ability to do low skill, low stress work-like tasks appears to be present" represents a mere statement of Arn's capacity to do low-stress tasks rather than a limitation indicating that she cannot do higher stress tasks.

11

However, the ALJ's decision never references Dr. Pentecost's opinion directly or makes any mention of Dr. Pentecost's finding about Arn's capacity for stress. Arn points to case law requiring remand if the court is unsure of what weight the ALJ placed upon a physician's opinion. *McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008). Though that case involved a treating physician, which Dr. Pentecost is not, his report is the only psychological opinion of Arn's functional limitations, including Arn's ability to handle stress. It is thus highly relevant to assessing Arn's psychiatric limitations and suitability for different types of work. Neither the ALJ's opinion nor the hypothetical posed to the VE contained any reference to Dr. Pentecost's opinion concerning Arn's ability to handle stress, thus leaving out a possibly critical piece of data which would help the VE evaluate Arn's capacity for work. The Commissioner's response that Dr. Pentecost's reference to stress was not a limitation is not reasonable, as there's no statement in Dr. Pentecost's report where he states that Arn could handle higher stress tasks. Thus, the ALJ's failure to evaluate Dr. Pentecost's statement regarding stress is legal error which must be reversed.

### E.     Whether the ALJ Properly Assessed Arn's Residual Functional Capacity

Because the ALJ erred in assessing Arn's impairments and did not give proper weight to Dr. Pentecost's opinion, the Court finds that the ALJ improperly determined Arn's Residual Functional Capacity. An ALJ must evaluate the combination of a claimant's physical and mental impairments when determining whether a claimant can undertake substantial employment. *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000). Specifically, the ALJ should obtain medical evidence that addresses the "claimant's ability to function in the workplace" when developing the RFC. *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001). SSA regulations have also

indicated that the RFC determination must indicate how the evidence supports each of the ALJ's conclusions, with specific reference to both medical and nonmedical evidence. If the RFC conflicts with a medical opinion, the ALJ must explain why the opinion was not adopted. SSR 96-8P, 1996 WL 374184 (S.S.A.).

As discussed above, the ALJ failed in his decision to properly address the medical evidence of Arn's back, breathing and mental impairments, as well as the nonmedical testimony pointing to Arn's difficulties in doing certain activities such as lifting or sitting. Because the ALJ has failed to properly evaluate the combined effects of Arn's impairments, it must redo this analysis before determining a new RFC. The ALJ also erred in failing to properly evaluate in its decision Dr. Pentecost's functional assessment of Arn's ability to handle stress, as well as the ALJ's own determination that Arn had moderate difficulties in maintaining concentration, persistence or pace. As Arn notes in her reply, jobs such as housekeeper and small parts assembler require certain levels of persistence, pace, and capacity for stress. Thus, these assessments are relevant evidence of functional limitations whose weight in determining the RFC should be discussed in the decision. For these reasons, the Court orders the ALJ to redetermine a RFC consistent with this opinion.

### F. Whether the ALJ Erred at Step Five in Finding Plaintiff Capable of Performing Other Work

The Eighth Circuit has ruled that vocational testimony elicited by hypothetical questions that "fail to relate with precision the physical and mental impairments of the claimant cannot constitute substantial evidence." *Bradley v. Bowen*, 800 F.2d 760, 763 (8th Cir. 1986). Thus, for the reasons discussed above, any hypothetical presented to the VE based on the current RFC is legal error and must be reversed. The Court directs the ALJ to reevaluate Arn's impairments

based on the entire record above, and then consider Arn's persistence, pace and stress limitations in determining whether Arn is capable of performing other work.

## III.  Conclusion

It is hereby ORDERED that the matter be REMANDED to the ALJ for reconsideration consistent with this Order.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  September 1, 2011
Jefferson City, Missouri